IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMES HAROLD MADISON, #163664,  )
                                 )
         Plaintiff,              )
                                 )
      v.                       )       CASE NO. 2:10-CV-610-TMH
                                 )             [WO]
                                 )
RICHARD ALLEN, et al.,          )
                                 )
       Defendants.          )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by James Harold Madison ["Madison"], a former state inmate, challenging actions taken against him during his incarceration at the Kilby Correctional Facility in April of 2010. In this complaint, Madison alleges that the defendants denied him placement in the Supervised Re-Entry Program in violation of both his right to equal protection and Title II of the Americans with Disabilities Act ["ADA"], 42 U.S.C. § 12131, *et seq*.  Madison names Richard Allen, Commissioner of the Alabama Department of Corrections ["ADOC"], Ruth Naglich, Associate Commissioner of Health Services for the ADOC, Steve Watson, Director of the Supervised Re-Entry Program, Richard Naile, a correctional officer assigned to the aforementioned program, and Ashley Slatton, a classification supervisor at Kilby, as defendants in this cause of action.  Madison seeks monetary

damages from the defendants.  *Id*. at 4.

The defendants filed an answer, special report and supporting evidentiary materials addressing Madison's claims for relief.  The court thereafter informed Madison that the defendants' special report may, at any time, be treated as a motion for summary judgment and explained to Madison the proper manner in which to respond to a motion for summary judgment with sworn statements or other evidence to show a genuine issue of material fact. *Order of October 15, 2010 - Doc. No. 21*.[1]  Pursuant to the aforementioned order, the court deems it appropriate to treat the defendants' report as a motion for summary judgment. Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to

---

[1] Although Madison filed responses to this order (Doc. No. 23 and Doc. No. 24), these responses are not made under penalty of perjury.  Thus, the responses are not suitable material for consideration in opposition to the defendants' motion for summary judgment. *See Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997) (per curiam). In addition, the other  uncertified documents attached to Madison's latter response, e-mails between correctional officials and a classification appeal form, do not create a genuine dispute of material fact with respect to the basis for the decision challenged herein as these documents support the defendants' arguments, i.e., Madison was denied SRP due to non-compliance with prescribed medical treatment and the need for continuity of medical care. *Plaintiff's Exhibits A-E - Doc. No. 24-1* at 1-5.

judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S.

---

[2] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id*.  "'Shall' is also restored to express the direction to grant summary judgment." *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, those cases citing the prior versions of the rule remain equally applicable to the current rule.

at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.").  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motion for summary judgment, Madison is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims for relief.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must

4

be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield*, 115 F.3d at 1564 n.6 (A plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any

part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary

6

judgment is proper.  *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Madison fails to demonstrate a requisite genuine dispute of material fact as is necessary to preclude summary judgment.  *Matsushita*, *supra*.

### III.  DISCUSSION

#### A.  Relevant Material Facts

Madison suffers from a right inguinal hernia, hypertension and coronary artery disease.  On January 25, 2010, correctional officials referred Maidson for potential

placement in the Supervised Re-Entry Program ["SRP"].[3]   At this time, Madison had a

health classification code of 6 which required approval from the Office of Health Services

for placement on supervised release and, therefore, his case was referred to defendant

Naglich for review.   Naglich undertook an investigation of Madison's medical history to

determine his suitability for supervised release.   Naglich ascertained that Madison suffered

from hypertension, a non-strangulated reducible inguinal hernia and coronary artery

disease.   She also received information demonstrating that Madison routinely ignored

prescribed medical treatment, including refusal to attend chronic care clinics for blood

pressure checks and repeated incidents of non-compliance with his medication regime

which contributed to his suffering chronic chest pains.   Based on Madison's non-compliant

behavior in managing his health issues and her determination that Madison's conditions

necessitated stringent monitoring and management by health care professionals, actions

which could not be assured if Madison were released from incarceration, Naglich did not

recommend Madison for placement in the Supervised Re-Entry Program and correctional

officials therefore denied Madison placement in the program.

---

[3]The SRP allows correctional officials to "place [eligible] selected inmates in a residential environment, under supervision of their sponsors and ADOC SRP Supervisors, where [the inmates] may obtain employment, education, and/or training and pay court-ordered restitution.  Rehabilitation, re-socialization, and reintegration of an offender are the SRP's primary goals and allows for offenders to re-enter society in a structured manner." *Defendants' Exhibit I - Doc. No. 20-8* at 1.   Inmates granted supervised release are required to (i) maintain employment for forty (40) hours per week, (ii) if not employed, work forty (40) hours per week on community service/public projects, or (iii) if employed for less than forty (40) hours per week, perform community service/public projects or enroll in an educational/training program for the remainder of the 40 hours. *Id*. at 28.

### B.  The Equal Protection Claim

1. <u>Liability of Defendants in Their Official Capacities</u>.  With respect to the alleged equal protection violation Madison lodges against the defendants in their official capacities, they are entitled to absolute immunity from monetary damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his [or her] official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity [with respect to this constitutional issue].  Therefore, Alabama state officials are immune from [equal protection] claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for the claims seeking monetary damages from them in their official capacities for the alleged violation of Madison's equal protection rights. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d

1573, 1575 (11ᵗʰ Cir. 1994).

2.  <u>Liability of Defendants in Their Individual Capacities</u>.  Madison complains that the defendants violated his right to equal protection when they denied him placement in the Supervised Re-Entry Program while granting other inmates with acute health issues placement in the program.  The defendants deny they took any action against Madison because of his medical conditions and associated physical limitations; rather, they maintain that their decision resulted from the determination that Madison should not be placed on supervised release because of Madison's non-compliance with the treatment prescribed for his conditions, the need for continuity of medical care and the attendant inability of health care personnel to adequately monitor Madison in the environment attendant to participation in the Supervised Re-Entry Program.  *Defendants' Exhibit F (Aff. of Ruth Naglich) - Doc. No. 20-5* at 2; *Defendants' Exhibit B (Aff. of Steven N. Watson) - Doc. No. 20-1* at 1-2. Specifically, while incarcerated, Madison demonstrated "Critical Non-Compliance Issues" regarding his "[g]eneral well being" and "not report[ing] for essential medications" thereby necessitating consistent monitoring of his conditions and "24/7 [access to the] Health Unit."  *Defendants' Exhibit G - Doc. No. 20-6* at 11.  In addressing the allegations made by Madison, Naglich avers as follows:

> I was asked by the Director of the SRP program if inmate James Madison (AIS #163664) had any medical conditions or behaviors that would limit his ability to participate in the SRP program.  I contacted the Health Services Administrator of the Kilby Correctional Institution where inmate

10

Madison was being housed, to request a summary of the inmate's medical treatment and the inmate's compliance with his prescribed treatment.  I was informed that inmate Madison was not compliant with his medication prescribed for his coronary artery disease.  In addition, I was informed that he frequently refused his scheduled chronic care clinics which included the monitoring of his blood pressure; which was critical to the management of his care and illness.

A subsequent review of inmate Madison's medical record[s] confirmed he did not take personal responsibility for his chronic illness[es], and was counseled frequently on the importance of being in compliance with his medical treatment.  The consequences of his actions related to his physical health were explained to him.  Inmate Madison had been taken to the emergency room and had subsequent hospital admissions related to his lack of compliance with his prescribed treatments.  His documented defiance to be a responsible individual ... cause[d] ... the Office of Health Services not to recommend his participation in the SRP program, not his related illness or a discriminatory practice related to an Americans with Disabilities Act-protected issue.

*Defendants' Exhibit F (Aff. of Ruth Naglich) - Doc. No. 20-5* at 2.  Based on Naglich's refusal to recommend Madison for placement in the Supervised Re-Entry Program, correctional officials, including defendant Watson, denied Madison participation in the program.  *Defendants' Exhibit B (Aff. of Steven N. Watson) - Doc. No. 20-1* at 2 (Based on Madison's non-compliance with prescribed medical treatment and the resulting "need [for] close[] attention" to his medical issues by health care personnel, "Madison [was] not assigned to SRP due to the danger that such placement posed to him.").

"Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed....  The Fourteenth Amendment 'does not require absolute equality or precisely

equal advantages,'... nor does it require the State to 'equalize [prison] conditions.'" *Ross v. Moffitt*, 417 U.S. 600, 611-612 (1974); *Hammond v. Auburn University*, 669 F.Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally.").  To establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis.  *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)."  *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006).  "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact....  Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."  *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977).  "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."  *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500

U.S. 352, 359 (1991).  Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent.  *McKleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

Since this case is before the court on a properly supported motion for summary judgment from the defendants, Madison bears the burden of producing evidence which would be admissible at trial sufficient to show:  (i) the defendants provided more favorable treatment to other similarly situated inmates, i.e., inmates who had been non-compliant with prescribed medical protocols, and (ii) the decision to deny him favorable treatment resulted from intentional discrimination.  *Celotex*, 477 U.S. at 322-324; *Anderson*, 477 U.S. at 249 (to preclude summary judgment, plaintiff must present significant probative evidence showing defendants provided more favorable treatment to similarly situated persons and did so as the result of intentional discrimination); *E & T Realty Company v. Strickland*, 830 F.2d 1107, 1114 (11th Cir. 1987), *cert. denied*, 485 U.S. 961 (1988) (Intentional discrimination on the part of the defendants in providing the challenged disparate treatment is required.  "Mere error or mistake in judgment" or "[e]ven arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause.").  The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence

13

in support of [his] position" sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252; *Harris*, 65 F.3d at 916 (conclusory allegations based solely on subjective beliefs are insufficient to oppose summary judgment).

Madison makes a specious and conclusory allegation regarding a denial of equal protection. The only probative evidence before the court indicates that the defendants did not treat Madison differently from inmates with actual comparative medical issues; rather, the evidence demonstrates that the actions undertaken during consideration of Madison for placement on supervised release occurred solely because of his non-compliance with various medical directives, the adverse affect such behavior had on his medical conditions and the resulting need for heightened supervision of his medical care.  An Alabama inmate has no constitutional right to placement in the Supervise Re-Entry Program because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see Francis v. Fox*, 838 F.2d 1147 (11th Cir. 1988); *Jones v. Diamond,* 594 F.2d 997 (5th Cir. 1979).  Absent the existence of a constitutionally protected liberty interest, this court must "look to see if persons similarly situated to the plaintiff" - persons non-compliant with necessary medical protocols - "have been treated differently." *Hammond*, 669 F.Supp. at 1563; *Sweet*, 467 F.3d at 1318-1319.

Madison fails to identify any similarly situated inmate who received differential

14

favorable treatment from the defendants.   Although Madison alleges that he "has been excluded from participating in this pre-release Re-Entry Program [while] other inmates with a health code 5 & 6 has been given an opportunit[y] to participate in the SRP program[,]" *Complaint - Doc. No. 1* at 5, he does not identify these inmates nor does he present any evidence regarding their non-compliance with medical directives so as to demonstrate they were actually similarly situated to him.   Thus, Madison fails to identify any other inmate with a similar record of non-compliance towards whom the defendants acted in a more favorable manner and his "equal protection claim necessarily fails first because he has not shown that he was treated differently from other, similarly situated prisoners."   *Sweet*, 467 F.3d at 1319; *Hammond*, 669 F.Supp. at 1563 (emphasis in original) ("To the extent that any equal protection analysis is required [on the plaintiff's assertion of discrimination], absent the plaintiff's establishing a clearly protected liberty or property interest by the Constitution ..., this Court [must] look to see if persons similarly situated to the plaintiff have been treated differently....   [T]here is *no* evidence that any [individuals] in the same position as the plaintiff have been treated differently from the plaintiff....   The plaintiff has offered the Court nothing on which to base his equal protection claim.   Accordingly, it is the opinion of this Court that the plaintiff's equal protection claim is without merit.").

Madison also fails to establish the second prong of his equal protection claim

requiring proof of intentional discrimination based on a constitutionally protected basis.

The evidence before the court demonstrates that correctional officials denied Madison

placement on supervised release due to his non-compliance with necessary medical

treatment protocols and the resulting need to provide medical treatment/supervision in a

more controlled environment than that available to an inmate on supervised release.  Under

applicable federal law, the allegations presented by Madison are insufficient to demonstrate

an equal protection violation and summary judgement is therefore due to be granted in

favor of the defendants on this claim.

### C.  The ADA Claim

Madison claims that the defendants violated his rights under the ADA.  "Under Title

II of the ADA, a 'qualified individual with a disability' cannot be excluded from

participating in, or be denied the benefits of, services, programs, or activities of a public

entity 'by reason of such disability' or 'be subjected to discrimination by' the public entity.

*See* 42 U.S.C. § 12132."  *Flournoy v. Culver*, ---- Fed. Appx. ----, 2013 WL 4256026, *1

(11th Cir. 2013).  Title II of the ADA applies to inmates confined in state correctional

facilities.  *United States v. Georgia*, 546 U.S. 151, 154 (2006) (citing *Pennsylvania Dep't*

*of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)); *Bircoll v. Miami-Dade County*, 480 F.3d

1072, 1081 (11th Cir. 2007) (It is well settled law "that a disabled prisoner can state a Title

II ADA claim if he is denied participation in an activity provided in state prison by reason

of his disability.").

1.   <u>Claim for Damages from Defendants in Their Individual Capacities</u>.   To the extent Madison seeks monetary damages from the defendants in their individual capacities for an alleged violation of the ADA, he is entitled to no relief as Title II of the ADA does not provide for individual capacity liability.   *Badillo v. Thorpe*, 158 Fed. Appx. 208, 211-212 (11th Cir. 2005) (relying on *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2nd Cir. 2001); *Dale v. Moore*, 121 F.3d 624, 627 (11th Cir. 1997) ("[T]he ADA does not provide for individual liability..."); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996) (same).   The defendants are therefore entitled to summary judgment on Madison's ADA claim for monetary damages lodged against them in their individual capacities.

2.   <u>Request for Damages Against Defendants in Their Official Capacities</u>.   Madison alleges that the defendants violated Title II of the ADA when they refused to place him in the Supervised Re-Entry Program due to physical limitations associated with his medical conditions.   In support of this claim, Madison maintains that he met the eligibility criteria for placement in the program and could perform all requisite tasks associated with supervised release, including assuming total responsibility for his medical care, obtaining gainful employment, performing community service and/or enrolling in an educational/training program but was denied placement on supervised release because of

17

his physical disabilities.  *Complaint - Doc. No. 1* at 3.  The defendants adamantly deny they acted in violation of the ADA in determining that Madison should not be placed on supervised release.

"[I]nsofar as Title II of the ADA creates a private cause of action for damages against the States for conduct that ***actually*** violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."  *Georgia*, 546 U.S. at 159.  (emphasis in original).  Consequently, with respect to the claims seeking relief from the defendants in their official capacities and as such claims are "in all respects ... a suit against the entity[,]" *Graham*, 473 U. S. at 166, the court must determine whether Madison has a claim viable under the ADA.

> Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." § 12132 (2000 ed.).  A "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2).  The Act defines "'public entity'" to include "any State or local government" and "any department, agency, ... or other instrumentality of a State," §12131(1).

*Georgia*, 546 U.S. at 153-54.

"In order to establish a prima facie case of discrimination under the ADA, [a plaintiff] must demonstrate that [he] (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of [his] disability." *Cash v. Smith,* 231 F.3d 1301, 1305 (11th Cir. 2000) (citation omitted). This standard derives from the ADA's language, stating that "no [employer] shall discriminate against a qualified individual with a disability because of the disability of such an individual." 42 USC 12112(a)....

For the first element of an ADA claim, a plaintiff qualifies as disabled under the ADA if he has "(A) a physical or mental impairment that substantially limits one or more of the major life activities ...; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(2).

Major life activities are further defined by the Equal Employment Opportunity Commission ("EEOC") as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *Cash,* 231 F.3d at 1305. "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 491, 119 S.Ct. 2139, 2151, 144 L.Ed.2d 450 (1999). "A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." *Id.* at 482-83, 119 S.Ct. at 2146-47. Moreover, the regulations provide that, "except in rare circumstances, obesity is not considered a disabling impairment." 29 C.F.R. Pt. 1630, App., § 1630.2(j).

"[T]he ADA requires those claiming the Act's protection ... to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience ... is substantial." *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 691-92, 151 L.Ed.2d 615 (2002) (quotations omitted). The Supreme Court has held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of ***central importance*** to most people's daily lives. The impairment's impact must also be permanent or long term." *Id.* at 198, 122 S.Ct. at 691 (emphasis added) (citation omitted).

19

*Greenberg v. BellSouth Telecommunications, Inc.*, 498 F.3d 1258, 1263-1264 (11th Cir. 2007) (emphasis in original).  It is therefore clear that the mere existence of "a physical impairment ... is not necessarily a disability under the ADA."  *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999).  In order to constitute a disability within the meaning of the ADA, a physical impairment must "substantially limit[] one or more of the major life activities of an individual."  42 U.S.C. § 12102(2)(A).  Furthermore, a physical or mental impairment subject to correction by medication or other measures is not a disability as defined in the ADA because the impairment would not substantially limit a major life activity.  *Sutton,* 527 U.S. at 482-483, 119 S.Ct. at 2146-2147.

Other than making the mere conclusory assertion regarding physical disabilities, Madison presents no evidence that he is disabled as defined by the ADA.  Specifically, the record is devoid of evidence that Madison suffered from a physical impairment which substantially limits his ability to perform any major life activity.  Instead, the record indicates that Madison could care for himself with respect to routine matters such as dressing, bathing and performing routine chores.  In addition, throughout the pleadings filed in this case, Madison maintains that he met all qualifications for participation in the Supervised Re-Entry Program which, in pertinent part, required that he be gainfully employed for forty hours per week, participate in public works/community service projects

for forty hours per week, or complete a combination of the aforementioned activities for forty hours per week. *Complaint - Doc. No. 1* at 3. Madison therefore concedes that his physical limitations did not hinder his ability to maintain employment or perform a variety of work projects. Moreover, there is no record that Madison suffered the requisite impairment nor is there any evidence that he was regarded as having such an impairment. Consequently, the court concludes that Madison has failed to demonstrate the presence of a disability within the meaning of the ADA.

Nevertheless, even assuming that Madison is a qualified individual with a disability, he cannot show that the defendants made any decisions to exclude him from participation in the Supervised Re-Entry Program because of a disability. *Farley v. Nationwide Mutual Ins. Co.*, 197 F.3d 1332, 1334 (11th Cir. 1999) (plaintiff must present evidence the disability constituted a determinative factor in the decision-making process); *see also McNely v. Ocala-Star Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996) (the ADA liability standard requires proof that the decision at issue occurred because of the alleged disability). Instead, the probative evidence before the court demonstrates that correctional officials denied Madison placement on supervised release because of his documented non-compliance with medical directives issued in the treatment of his conditions and the attendant concern of health care professionals that Madison required medical treatment/supervision in a more controlled environment than that which would be available

to him on supervised release.  Madison was therefore not excluded from participation in the Supervised Re-Entry Program by reason of a disability.  *See* 42 U.S.C. § 12132.

In light of the foregoing, Madison's ADA claim provides no basis for relief against the defendants in their official capacities or the entity they represent.  Thus, the defendants are entitled to summary judgment.  Because Madison cannot show an ADA or constitutional violation, the court need not undertake analysis of whether Title II is a valid abrogation of sovereign immunity from money damages in the circumstances presented by Madison's case.  *See Georgia*, 546 U.S. at 159 (remanding for determination of what conduct violated Title II, whether that conduct also violated the Fourteenth Amendment, and "insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid").

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

22

ORDERED that on or before October 9, 2013 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 24th  day of September, 2013.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE